IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN LEBOON, <br><br> PLAINTIFF, <br><br> v. <br><br> BEAUMONT AT BRYN MAWR, <br><br> and <br><br> MARY WELLS <br><br> DEFENDANTS. | CIVIL ACTION NO._____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Steven LeBoon by and through his attorneys, Bell & Bell, LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, liquidated damages, attorneys' fees and other relief on behalf of Plaintiff Steven LeBoon ("Plaintiff" or "Mr. LeBoon"), a former employee of Defendant Beaumont at Bryn Mawr ("Beaumont") who was supervised in his position by Defendant Mary Wells ("Ms. Wells"). Mr. LeBoon has been harmed by Beaumont's discrimination and harassment on the basis of Mr. LeBoon's disability or perceived disability, retaliation for Mr. LeBoon's seeking accommodation of his disability or perceived disability. This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

2. This Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

3. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

4. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

5. All conditions precedent to the institution of this suit have been fulfilled.  Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Notice of Right to Sue on November 12, 2013.  This action has been filed within 90 days of Plaintiff's receipt of said Notice.  With respect to the PHRA claims alleged herein, more than one year has passed since Plaintiff's filing with the PHRC.

## VENUE

6. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b) because the claim arose in this judicial district.

## PARTIES

7. Plaintiff Steven LeBoon is a male resident of Blooming Glen, Pennsylvania and the United States of America.

8. Defendant Beaumont at Bryn Mawr was and is a corporation duly organized and existing under state law that acted as Mr. LeBoon's employer.

9. Mr. LeBoon was employed at Beaumont's retirement community located at 601 North Ithan Avenue, Bryn Mawr, PA 19010.

10. At all relevant times, Defendant Beaumont acted by and through its authorized agents, servants and/or employees acting within the course and scope of their employment with Beaumont, under the direct control of Beaumont, and in furtherance of Beaumont's business.

11. At all relevant times, Defendant Beaumont is and has been an employer employing more than fifteen employees.

12. Defendant Mary Wells is an individual who acted as Mr. LeBoon's supervisor, and who has a business address at 601 North Ithan Avenue, Bryn Mawr, PA 19010.

13. Ms. Wells was employed by Beaumont as Beaumont's Director of Human Resources.

14. At all relevant times, Defendants are and have been "employers" and/or "persons" as defined under the laws at issue in this suit and are accordingly subject to the provisions of said laws.

15. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

## FACTS

16. In February 2012, Mr. LeBoon was interviewed via telephone and later in person by Ms. Wells, Beaumont's Director of Human Resources.

17. On or about February 8, 2012, Mr. LeBoon was offered the position of Assistant Director of Human Resources.

18. Mr. LeBoon went through a series of physicals conducted by Beaumont and at the final physical on or about March 9, 2012, Mr. LeBoon informed the nurse that he had disabilities caused by severe bodily injuries he had sustained in a workplace accident in 2009 while working for a previous employer.

19. Mr. LeBoon began working for Beaumont as Assistant Director of Human Resources on March 12, 2012 under the supervision of Ms. Wells.

20. During his employment with Beaumont, Mr. LeBoon performed his duties in a satisfactory and professional manner.

21. Mr. LeBoon is a qualified individual with disabilities.

22. Mr. LeBoon suffers from severe, chronic bodily injuries he suffered in a workplace accident in 2009, which include, but are not limited to, a herniated disc in his neck and back, spinal injuries and sciatic nerve damage.

23. Mr. LeBoon's conditions affect one or more major life activities including, but not limited to, his ability to perform repetitious movements, manual tasks, continuous stooping, walking, standing, lifting, and bending.

24. It is not known exactly how long Mr. LeBoon's impairment will last, but his impairment has already lasted for a period far longer than six months and continues to plague Mr. LeBoon.

25. During his employment with Beaumont, Beaumont regarded Mr. LeBoon as disabled.

26. On or about April 5, 2012, Mr. LeBoon was instructed by Ms. Wells to move boxes of employee files from her office to the upstairs storage space for archiving.

27. Mr. LeBoon began to perform the task as instructed, however, he began to experience neck, arm and back pain related to his disabilities and requested of Ms. Wells that he

be permitted to take a short break, at which point Ms. Wells asked Mr. LeBoon what was wrong with him.

28. Mr. LeBoon informed Ms. Wells of his disabilities and asked for her assistance with moving the boxes, which she refused.

29. Mr. LeBoon asked if he could put in a request for maintenance or the grounds department to move the boxes and Ms. Wells also denied this request for accommodation.

30. Mr. LeBoon also informed Ms. Wells that once his insurance coverage began on May 1, 2012, he would be scheduling surgery for his injuries to his shoulder, neck and back.

31. Ms. Wells reminded Mr. LeBoon that she was expecting to take FMLA leave in the near future and that he could not take off any days during her leave.

32. Ms. Wells also said to Mr. LeBoon, "Your ADA bullshit is scaring me."

33. Shortly thereafter, on or about April 11, 2012, Ms. Wells called Mr. LeBoon into her office and stated that she had pulled a second background check on or about April 9, 2012 and that the documents she received in response had confirmed Mr. LeBoon's serious health issues.

34. In fact, Ms. Wells stated to Mr. LeBoon upon looking at the documents, "you weren't kidding about your health."

35. Ms. Wells then reiterated that Mr. LeBoon's health and disabilities were bothering her and alarming to Beaumont's business.

36. Also on or about April 11, 2012, Ms. Wells requested that Mr. LeBoon remove all I-9 forms from Beaumont employee files, requiring Mr. LeBoon to perform a repetitive

movement which, approximately twenty minutes into the task, began to cause him pain in his arms due to his disabilities.

37. Mr. LeBoon informed Ms. Wells that the task would take him longer than expected because of his need to take breaks between performing the repetitive movement, and requested that he be allotted more time to perform this task as an accommodation of his disabilities.

38. Ms. Wells looked at Mr. LeBoon in disgust and left the office to meet with Joe Fortenbaugh, Beaumont's President.

39. On or about April 27, 2012, Ms. Wells requested Mr. LeBoon move a printer onto a new table she had purchased, which would require Mr. LeBoon to lift more than he could, given his disabilities.

40. Mr. LeBoon requested that Ms. Wells ask the IT department to move the printer due to his restrictions on lifting and she responded by asking if Mr. LeBoon needed to go home because his back was hurting.

41. Mr. LeBoon responded that he did not need to go home and that he had an important employee presentation to facilitate later that day.

42. Mr. LeBoon also mentioned during this conversation that the office was set up like a "rat trap" and he would like to make his office more ADA compliant to accommodate his disabilities.

43. He informed Ms. Wells that he was going to request his wife's help in rearranging his office furniture to ease his moving around the office.

44. At this juncture in the conversation, Ms. Wells again reminded Mr. LeBoon how important her upcoming FMLA leave was to the company, and that Mr. LeBoon could not take off time related to his disabilities during her absence.

45. On or about April 29, 2012, Mr. LeBoon, Mrs. LeBoon and Ivan [LNU] from the buildings department rearranged Mr. LeBoon's office furniture to accommodate his disabilities.

46. The following day, April 30, 2012, when Mr. LeBoon reported to his office, Ms. Wells was waiting for him and Mr. LeBoon asked, "do you like the way I've rearranged the furniture?" or words to that effect.

47. Ms. Wells replied, "I am not tolerating your ADA bullshit or your ruining my FMLA leave. We need to talk, I am letting you go because of your health issues and because I cannot afford to have any issues with your health while I am out on FMLA."

48. Ms. Wells also informed Mr. LeBoon that, "Your health insurance that was to begin tomorrow is no longer effective. I am making sure that Beaumont does not pay for any of your disabilities or injuries."

49. On April 30, 2012, Mr. LeBoon was terminated by Beaumont as a result of disability discrimination and harassment, because Beaumont regarded Mr. LeBoon as disabled, and in retaliation for Mr. LeBoon's requests that his disabilities be accommodated.

50. Defendant Beaumont discriminated against and harassed Mr. LeBoon on the basis of his disabilities and/or perceived disabilities, and retaliated against Mr. LeBoon for his requests that his disabilities be accommodated in violation of the ADA, and PHRA.

51. Defendant Wells aided and abetted Beaumont's discrimination, harassment, and retaliation in violation of the PHRA.

52. Mr. LeBoon has suffered financial losses as a proximate result of the actions and inactions of Defendants.

53. As a result of the severe and pervasive disability discrimination and harassment, and retaliation for his requests for accommodations described above, Mr. LeBoon is left uncomfortable, emotionally distraught, humiliated, and in fear.

54. As a result of the severe and pervasive disability discrimination and harassment, and retaliation for his requests for accommodation suffered by Mr. LeBoon, Mr. LeBoon has suffered, and continues to suffer severe emotional distress.

55. Beaumont, Ms. Wells and others all acted with the intent of causing, or in reckless disregard of the probability that their actions would cause Mr. LeBoon severe emotional distress.

## COUNT I
### The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.
### (Plaintiff vs. Beaumont)

56. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

57. Based on the foregoing, Defendant Beaumont has engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

58. In discriminating against and harassing Mr. LeBoon because of his disabilities and/or because Beaumont regarded Mr. LeBoon as disabled, in refusing to engage in an interactive process with respect to accommodating Mr. LeBoon's disabilities, and in terminating Mr. LeBoon in retaliation for seeking reasonable accommodations of his disabilities, Defendant Beaumont violated the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

59. Said violations were intentional and willful.

60. Said violations warrant the imposition of punitive damages.

61. As the direct and proximate result of Defendant Beaumont's violation of the

Americans with Disabilities Act, Plaintiff Steven LeBoon has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon and has incurred attorneys' fees and costs.

## COUNT II
**Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.**
**(Plaintiff v. All Defendants)**

62. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

63. Based on the foregoing, Defendant Beaumont engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

64. In discriminating against and harassing Mr. LeBoon because of his disabilities and/or because Beaumont regarded Mr. LeBoon as disabled, in refusing to engage in an interactive process with respect to accommodating Mr. LeBoon's disabilities, and in terminating Mr. LeBoon in retaliation for seeking reasonable accommodations of his disabilities, Defendant Beaumont violated the Pennsylvania Human Relations Act.

65. Ms. Wells aided and abetted the discrimination, harassment and retaliation engaged in by Beaumont as described herein, and in so doing, Ms. Wells violated the Pennsylvania Human Relations Act.

66. As the direct and proximate result of Defendants' violations of the Pennsylvania Human Relations Act, Plaintiff Steven LeBoon has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

67. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE**, Plaintiff Steven LeBoon respectfully requests that this Court enter judgment in his favor and against Defendants and Order:

a. Appropriate equitable relief, including reinstatement or front pay;

b. Defendants compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination and retaliation;

c. Defendants compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of their unlawful conduct;

d. Defendants pay Plaintiff punitive damages;

e. Defendants pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants pay Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available pursuant to the ADA, and the PHRA; and

h. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Steven LeBoon hereby demands trial by jury as to all issues so triable.

*/s/ James A. Bell IV*
_____
James A. Bell IV, Esquire
PA Attorney I.D. No. 81724
Christopher A. Macey, Jr., Esquire
PA Attorney I.D. No. 207800
Bell & Bell LLP
1617 JFK Blvd. – Suite 1020
Philadelphia, PA 19103
(215) 569-2500

Attorneys for Plaintiff Steven LeBoon

DATE:  February 7, 2014